**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Linvel James Risner, on behalf of himself and those similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Law School Admission Council, Inc.,<br><br>        Defendant. | Case No.  25-cv-4461-JFM |

## JOINT RULE 26(f) REPORT

Pursuant to Rule 26(f) and Judge Murphy's policies and procedures, the

Parties have thoroughly discussed a discovery plan and provide the following report:

### I.    Counsel

    A.    Lead counsel for plaintiff(s): <u>Will Burgess; Bennett Rawicki</u>

    B.    Lead counsel for defendant(s): <u>David Gringer; Alan Schoenfeld</u>

    C.    All counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):
        <u>Will Burgess</u>
        <u>Peter McCall</u>
        <u>Bennett Rawicki</u>

    D.    All counsel who participated in Rule 26(f) conference on behalf of Defendant(s):
        <u>David Gringer</u>
        <u>Paul Vanderslice</u>
        <u>Kimberly Chen</u>
        <u>Allison Que</u>

### II.    Description of claims and defenses

The First Amended Complaint, DI 37, asserts three Sherman Act claims on

behalf of Plaintiff and the Proposed Class (as defined in the First Amended

Complaint) against Defendant Law School Admission Council, Inc., a nonprofit membership organization with a membership comprising all ABA-approved law schools ("Member Law Schools"). The claims relate to the Defendant's fees charged as part of the electronic application process for all Member Law Schools: a $215 upfront subscription fee and a $45 per application report fee, as of the 2026 application cycle. These fees were paid through Defendant's Law School Application Platform (as defined in the First Amended Complaint). Plaintiff alleges that these fees are supracompetitive.

Claims (Provided by Plaintiff)

Plaintiff asserts three claims. Count I—Horizontal Restraints of Trade in the Application Markets (Sherman Act Section 1)—alleges that Member Law Schools engaged in concerted action through Defendant to fix a price floor to apply to law school through Defendant's fees. Count II—Horizontal Restraints of Trade in the Platform Markets (Sherman Act Section 1)—alleges that Member Law Schools engaged in concerted action through Defendant to (1) fix the price that they would pay as purchasers of the Law School Application Platform and (2) exclude Defendant's potential competitors by agreeing to exclusively use the Law School Application Platform. Counts I and II challenge two alleged written policies of Defendant, a "Pricing Policy" that allegedly sets the prices to be paid for the Law School Application Platform and an "Exclusivity and Use Policy" that allegedly requires Member Law Schools to exclusively use the Law School Application Platform.

Count III—Monopolization and Conspiracy to Monopolize in the Law School Centralized Application Platform Submarket (Sherman Act Section 2)—alleges that Defendant monopolized and conspired with Member Law Schools to monopolize the submarket, in which it has monopoly power, by requiring Member Law Schools to exclusively use its Law School Application Platform and by entering into de facto exclusive agreements by inducing long-term loyalty with payments and services resulting from supracompetitive revenue.

Plaintiff seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, as well as injunctive relief under Section 15 of the Clayton Act, 15 U.S.C. § 26. Plaintiff also seeks to represent a proposed class under Federal Rule of Civil Procedure 23.

Defenses (Provided by LSAC)

Except for the Stipulated Facts below, LSAC denies all material allegations in the First Amended Complaint and asserts that Plaintiff has failed to state a claim upon which relief can be granted. *See* DI 44.  LSAC's defenses stated herein are without prejudice to, and in addition to, the arguments raised in the pending motion to dismiss.

Should this case survive the pending motion to dismiss, LSAC expects discovery to support the following defenses, among others:

Counts I and II

- LSAC's fee-setting decisions are unilateral and independently determined by LSAC, and are not the result of any agreement—unlawful or otherwise—among Member Law Schools.

- LSAC does not maintain an "Exclusivity and Use Policy" as alleged in the First Amended Complaint or otherwise require Member Law Schools to use its Law School Application Platform.

- None of Plaintiff's alleged "Application Markets" or "Platform Markets" are valid relevant antitrust markets.

- The challenged conduct did not cause any anticompetitive effects in a valid relevant antitrust market.

- LSAC benefits applicants and schools. Its platform provides centralized efficiencies that reduce transaction costs for users on both sides. For example, the Credential Assembly Service side of LSAC's platform allows applicants to submit transcripts and letters of recommendation a single time for use across any law schools to which they apply, thus eliminating the need to separately procure and transmit those materials to each school. CAS also provides applicants with in-depth transcript analysis and score data beyond raw LSAT scores, enhancing their ability to make informed application decisions. For law schools, the Unite side of LSAC's platform provides functionality designed for the particular needs of law school admission offices ranging from application intake to admissions decision making. LSAC's pricing also promotes educational equity and access, including through LSAC's fee waiver program.

Count III

- LSAC does not have monopoly power in a valid relevant antitrust market.

- LSAC has not engaged in any exclusionary conduct.

- LSAC has not participated in a conspiracy to monopolize among Member Law Schools.

In addition, for all the claims:

- Plaintiff has not suffered cognizable antitrust injury and lacks antitrust standing to pursue his claims.

- LSAC intends to challenge Plaintiff's attempt to certify the class.

LSAC reserves the right to assert additional defenses as discovery progresses.

Legal Issues

At this stage, and recognizing that the Parties' understanding of the facts and legal issues of this case may evolve as discovery progresses, the Parties anticipate the following key facts and legal issues:

- **Counts I and II**
  - Whether the challenged conduct constitutes concerted action.
  - Whether Plaintiff has properly defined the relevant antitrust market(s), if applicable based on the relevant antitrust mode of analysis (per se, quick look, or rule of reason).
  - Whether the challenged conduct caused marketwide anticompetitive effects, if applicable based on the relevant antitrust mode of analysis.
  - Whether the challenged conduct had any procompetitive benefits, if applicable based on the relevant antitrust mode of analysis.

- o Whether any procompetitive benefits of the challenged conduct could have been accomplished by less restrictive means, if applicable based on the relevant antitrust mode of analysis.

- o The appropriate antitrust mode of analysis for the challenged conduct.

- **Count III**

  - o Whether the Law School Centralized Application Platform Submarket is a properly defined antitrust market if Plaintiff attempts to establish monopoly power by indirect evidence.

  - o Whether Defendant has monopoly power in the Law School Centralized Application Platform Submarket.

  - o Whether the challenged conduct is exclusionary.

- **All Claims**

  - o Whether the challenged conduct caused antitrust injury to Plaintiff and common impact to the proposed class.

  - o Whether Plaintiff and the proposed class have antitrust standing.

  - o Whether Defendant charged supracompetitive prices to Plaintiff and the proposed class.

  - o Whether Rule 23 certification of a class is appropriate.

  - o Whether injunctive relief is appropriate.

### III.    Stipulated facts and insurance coverage and deductibles

### Background Facts

1. Defendant Law School Admission Council, Inc. ("LSAC") is a not-for-profit membership corporation under 26 U.S.C. § 501(c)(3) that is incorporated in Delaware.

2. LSAC's headquarters and principal place of business are in Newtown, Pennsylvania.

### Law School Application Platform

3. LSAC offers a Law School Application Platform, one feature of which is LSAC's Credential Assembly Service.

4. Applicants using LSAC's Credential Assembly Service who do not receive a fee waiver pay a one-time subscription fee and a report fee for every school to which an applicant applies.

5. The Credential Assembly Service subscription and report fee prices in paragraph 36 of the First Amended Complaint are true and accurate for each July 1 to June 30 fiscal year.

6. LSAC's Law School Application Platform offers a feature that allows applicants to pay Credential Assembly Service fees and school-specific application fees to LSAC. LSAC then remits the school-specific application fees to the relevant schools.

7. LSAC offers application review and management features to law schools through the Unite features of LSAC's Law School Application Platform.

On June 12, 2026, LSAC produced to Plaintiff the applicable insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment in this action.

IV.    **Anticipated scope of discovery**

A.    **Summarize with specificity those issues on which the parties will need to conduct discovery.  Identify categories of information each party needs in discovery and why.**

The Parties anticipate needing discovery on the following issues. This list is nonexclusive and may evolve as discovery progresses. The inclusion of a category of discovery by one party does not constitute an admission by the other party that the discovery is relevant or proportionate to the case.

**Anticipated Categories of Discovery**

Plaintiff's Anticipated Discovery:

- Transaction data regarding Credential Assembly Service transactions for Plaintiff and the proposed class.
- Transaction data for law school applications submitted through the Law School Application Platform for Plaintiff and the proposed class.
- The features and alleged benefits of the Law School Application Platform, including assessments and valuation such features and benefits.
- Costs and revenue of the Law School Application Platform.
- Pricing of Credential Assembly Service fees, including assessment and determination of such prices, such as Defendant's decision to increase fees in 2011
- Defendant's relationship with the Member Law Schools, including its assessment of potential new members.
- Defendant's corporate structure and operations.
- Defendant's expenditures, including its services and payments provided to Member Law Schools.
- The alleged anticompetitive agreements.
- The relevant antitrust markets, including third-party discovery of reasonably interchangeable products or services.
- The alleged supracompetitive nature of the prices for Credential Assembly Service fees.
- The identities of members of the proposed class.

Plaintiff anticipates that the parties may disagree about the relevant temporal scope of discovery. The Parties agree to promptly raise any issues that arise through the typical discovery conferral and dispute process.

LSAC's Anticipated Discovery:

- Plaintiff's law school application decision-making process and experience.
- Plaintiff's fees incurred for his law school applications and any fee waivers he sought or received.
- Plaintiff's experience with other application platforms.
- Plaintiff's post-application conduct and reapplication intent.
- Plaintiff's basis for his allegations and his familiarity with the alleged conduct.
- Plaintiff's supposed injuries and claimed damages.
- Plaintiff's litigation involvement, relationship with counsel, and any conflicts with absent class members.

B.    **Anticipated number of interrogatories per party:**

Plaintiff: 25

Defendant: 25

C.    **Anticipated number of depositions per party:**

Plaintiff's Proposal – An expansion of the typical number of depositions from 10 per side to 20 per side for this high-stakes case implicating a widespread conspiracy. See section E, below. Expert depositions will not count toward this limit.

*Plaintiff*:    20 depositions to include Defendants' employees and trustees, former employees and trustees, and non-parties such as law schools and other application platforms.

*Defendant*:    20 (for fairness the same amount, though likely not taking as many depositions).

Defendant's Proposal – Each side should be limited to 10 fact depositions, consistent with the presumptive limit under Rule 30. Expert depositions will not count toward this limit.

Plaintiff:    10 fact depositions, plus expert depositions

Defendant:    10 fact depositions, plus expert depositions

The parties agree that they will work in good faith on an hours limit for any 30(b)(6) testimony.

9

D.    **Do the parties anticipate the need for any agreements on remote deposition protocols?**

The Parties do not anticipate the need for a remote deposition protocol or agreement at this time and will work together in good faith to reach agreement if one becomes necessary.

E.    **To the extent either party proposes to exceed the presumptive limits in the Federal Rules for discovery, explain the basis for that proposal.**

Plaintiff's Position

Plaintiff proposes to exceed the presumptive limits in the Federal Rules with respect to the number of depositions. Ten additional depositions are necessary given the complexity of the case and the anticipated need for third-party discovery. This case alleges conduct spanning several decades, implicating dozens of current and former LSAC personnel. Plaintiff thus anticipates needing to expend most or all of the default 10 depositions on party discovery. Plaintiff also anticipates seeking third-party testimony from, potentially, former LSAC personnel, Member Law Schools, and other application platforms. Because Plaintiff is unable at this time to determine the distribution of depositions between party and third-party discovery, Plaintiff proposes raising the presumptive limit of all depositions to 20 per side.

Defendant's presentation of this matter as a narrow case for which it will not need to produce much discovery ignores the pleaded allegations. Plaintiff asserts a conspiracy implicating at least 197 separate entities. Moreover, several of the newly pleaded primary source documents underscore the need for more expansive party discovery of LSAC and third parties than LSAC appears to anticipate because the allegations of misconduct precede the limitations period and involve witnesses not

10

currently under LSAC's control. Of course, Plaintiff has limited insight into other witnesses' knowledge at the start of discovery, which will be informed by LSAC's forthcoming document productions.

Defendant also argues that expanding the number of depositions is unnecessary because document subpoenas to non-parties can obtain much of the same information. This speculation is an unsupported basis for preemptively limiting depositions. In fact, in this case non-party testimony is likely to provide information beyond what is contained in documents because, for example, a key part of this case is analyzing what would have happened but-for Defendant's anticompetitive conduct, which is unlikely to be fully captured in documents.

Plaintiff does not request expanding other discovery limits at this time. The expansion to 20 depositions is reasonable given the scope and complexity of this case and is below the 25 depositions that this Court permitted in another complex antitrust matter, *Greystone Mortgage, Inc. v. Equifax Workforce Solutions LLC* matter, No. 2:24-cv-02260-JFM, DI 66. Plaintiff reserves the right to request additional discovery as the case progresses if good cause exists to do so.

LSAC's Position

LSAC proposes that each side be permitted ten fact depositions, consistent with the presumptive limit under Rule 30, and that expert depositions not count toward that limit.  This is a single-defendant action brought by a single named plaintiff challenging the fees LSAC charges for a single service. Plaintiff's claims reduce only to whether LSAC's CAS fees are set pursuant to an illegal agreement with its member schools and whether it unlawfully requires schools to exclusively

11

use its platform.  Nothing about these straightforward allegations warrants a further departure from the default limitations on depositions.

Plaintiff has not justified expanding fact depositions beyond ten per side. Plaintiff's own initial disclosures confirm that the presumptive limit is more than sufficient:  For each of the identified potential witnesses, Plaintiff describes their potential knowledge using language that is either identical to or substantially overlapping with the topics attributed to other identified individuals or the Board of Trustee members, varying only in how many of those same topics each witness purportedly covers.  Plaintiff does not identify any potential witness with knowledge of a distinct topic that would require separate deposition testimony beyond what could be obtained from other identified witnesses.  In addition, many of these overlapping topics, which largely center on LSAC's fee-setting process and its relationship with law schools, can be addressed through a Rule 30(b)(6) deposition.

Plaintiff's reliance on *Greystone* is misplaced.  *Greystone* involves a multi-billion-dollar company accused of a three-pronged anticompetitive scheme encompassing allegedly anticompetitive "exclusive dealing, payments to Data Contributors, and acquisitions," for which the plaintiffs maintained that they would likely require "discovery from individuals working in different divisions within Defendants' corporate structure."  2:24-cv-2260, DI 59 at 7.  Even in those circumstances, this Court observed that it "didn't see any reason why party discovery needs to be expanded beyond the default limits." Mar. 25, 2025 Hr'g Tr., 2:24-cv-2260, DI 67 at 11-12. The same is even truer here, where Plaintiff's claims

concerning a single fee for a single service are significantly narrower than those in *Greystone*. And while Plaintiff claims that he "alleges conduct spanning several decades," his amended complaint is devoid of concrete factual allegations to support this sweeping timeline.  Plaintiff's bare assertion of a decades-long timeline does not justify expanding the deposition limit.

This Court only permitted 15 additional non-party depositions in *Greystone* upon the plaintiffs' showing that "third-party discovery is unusually important in this case." *Id.* at 12. Plaintiff has not and cannot make any equivalent showing here. Plaintiff's "concerted action" theory is premised on the straightforward allegation that LSAC operates its platform and sets its fees "at the direction of the Member Law Schools that control it," DI 37 ¶34, not that each law school independently engaged in separate acts of misconduct requiring individualized discovery.  To the extent Plaintiff believes he needs information from select non-parties, much of that information can be obtained through targeted document subpoenas without consuming deposition slots.

F.    **Do the parties anticipate the need for a Fed. R. Evid. 502(d) order?**

The Parties have included Rule 502(d) provisions in their proposed protective order.

G. **Do the parties anticipate the need for any third-party discovery?  If so, identify the likely third parties and the discovery to be sought.**

Plaintiff's Position

Plaintiff anticipates potentially seeking third-party discovery from:

- Former LSAC Personnel: Plaintiff's initial disclosures identified several former LSAC personnel, including former CEOs and Board of Trustee members, who may have relevant information. Plaintiff plans to seek documents and/or deposition testimony from former personnel.

- Member Law Schools: Plaintiff may seek documents and/or deposition testimony from Member Law Schools regarding, e.g., their relationship with LSAC, the alleged concerted action, and their application processes.

- Other Application Platforms: Plaintiff has identified several other application platforms relevant to this case. *See* DI 37 at ¶ 160. Plaintiff may seek documents and/or deposition testimony regarding the platforms, the associated costs, revenue, and value.

LSAC's Position

Plaintiff is entitled to prove his case as he sees fit within the limits of the Federal Rules.  LSAC notes, however, that much of the information Plaintiff identifies above is likely to be duplicative of materials he can seek from LSAC in party discovery.  For example, LSAC's document production is expected to include, to the extent relevant and non-privileged, internal decision-making documents, Board of Trustee materials, and membership and governance records.

14

H. **Do the parties anticipate the need for experts?  If so, identify the subjects on which the expert(s) may opine.  Be sure to point out whether defendant(s) will be advancing experts on affirmative issues, or only in response to plaintiff(s) experts. State whether expert depositions will be taken, and if so, an agreement or positions on how many will be required.**

The Parties anticipate needing economic experts on several subjects, including but not limited to: market definition, market power, competitive effects of the challenged conduct, damages and antitrust injury, and class certification issues. Plaintiff might also proffer an expert on the technical specifications of the Law School Application Platform and associated industry standards and practices. LSAC may submit affirmative expert testimony on the procompetitive benefits of the challenged conduct, but has no burden of proof on any issue and therefore anticipates submitting its expert testimony in rebuttal.

The Parties agree that each expert will be deposed once, which would not count towards the deposition limits identified above, and that the Parties will meet and confer in good faith should the taking party believe that an expert deposition requires more than 7 hours on the record—for instance, this may be appropriate in a circumstance where either Party uses one expert to address issues of economic liability as well as damages or class certification. Both Parties reserve all rights to disclose experts on none, some, or all of these subjects, or others, in accordance with Fed. R. Civ. P. 26(a)(2).

15

I.   **Does the plaintiff expect to request attorneys' fees as a prevailing party, either pursuant to a contract or a statute? If so, state the basis for the expected request.**

Plaintiff expects to request an award of reasonable attorneys' fees pursuant to the Clayton Act, 15 U.S.C. §§ 15 and 26, and Federal Rule of Civil Procedure 23(h).

J.   **Has each party provided written notice to the client of the obligation to preserve all relevant material, including electronic records?**

Plaintiff    Yes

Defendant    Yes

## V.   Status of discovery

The Parties exchanged initial disclosures on June 12. Both parties also served their first set of document requests on June 12, and LSAC served its first set of interrogatories to Plaintiff on the same day.

## VI.   Proposed case management deadlines

The Parties propose the below schedule as a reasonable schedule to allow the Parties to complete fact and expert discovery.

A.   Rule 26(a)(1) initial disclosures were exchanged: June 12, 2026

B.   Deadline for Plaintiff to request leave to amend complaint to add claims or Parties: Eight weeks after the Court's ruling on the pending motion to dismiss.

C.   Deadline to serve party requests for production, interrogatories, and requests for admission: October 22, 2026

D.   Deadline for substantial completion of party document production in response to discovery requests served as of the date of this filing: December 17, 2026

E.   Deadline to notice fact witness depositions: January 12, 2027

16

F.      Close of fact discovery: <u>March 9, 2027</u>

G.      Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): <u>April 14, 2027</u>

H.      Deadline for rebuttal expert reports (if any): <u>June 10, 2027</u>

I.      Deadline(s) to complete expert depositions:  <u>July 16, 2027</u>

J.      Deadline to file motions for summary judgment, for class certification, and to exclude expert testimony: <u>September 22, 2027</u>

K.      Deadline for summary judgment/class certification/*Daubert* response briefs: <u>November 3, 2027</u>

L.      Deadline for summary judgment/class certification/*Daubert* reply briefs: <u>December 15, 2027</u>

The parties agree that no reply expert reports will be permitted. The parties also agree that expert discovery should be sequenced after fact discovery so that experts may offer opinions based upon the complete factual record, and that a discovery period in excess of 120 days is warranted given the scope of discovery Plaintiff intends to seek. The parties also agree that the schedule for briefing summary judgment, class certification, and *Daubert* motions is reasonable and appropriate for the parties to complete simultaneous briefing on three categories of motions, and is shorter than schedules courts in this District have set in antitrust cases in similar circumstances. *See, e.g.*, *Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, No. 2:23-cv-828, DI 94 (E.D. Pa. Aug. 14, 2025) (3+ months for briefing class certification and related *Daubert* motions); *Davis v. Hanna Holdings, Inc.*, No. 2:24-cv-2374, DI 49 (E.D. Pa. Oct. 21, 2024) (3+ months for summary judgment and merits *Daubert* briefing).

## VII.   Electronic discovery

The Parties believe most relevant documents in this case will be electronic. The parties are actively discussing a proposed ESI protocol and will submit it to the Court in advance of the Rule 16 conference.

## VIII.   Protective orders and confidentiality agreements

LSAC anticipates the need for a protective order to protect documents and information that may be exchanged in discovery and sought from non-parties in this action, which may include trade secret or other confidential research, development, or commercial information within the meaning of Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, as well as personally identifying information of parties or non-parties, including information that might fall under privacy laws and regulations.  The Parties are actively discussing a proposed protective order and will submit it to the Court as soon as possible.

## IX.   Alternative dispute resolution

**A.**   **Have the parties engaged in any settlement discussions?  If so, set forth the status of those negotiations.  If not, explain why not.**

No. The Parties believe that resolution of the pending motion to dismiss and discovery are necessary before settlement discussions can be productive.

**B.**   **Have the parties explored or considered other forms of alternative dispute resolution?  If so, summarize those efforts. If not, state the parties' positions with respect to ADR, as required under Local Rule 53.3.**

The Parties are open to mediation or settlement conferences after progress has been made in discovery so that settlement discussions may be informed and productive.

C. **Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.**

Plaintiff: <u>Will Burgess</u>

Defendant: <u>David Gringer</u>

## X.   Consent to send case to a Magistrate Judge

The Parties do not consent to proceeding before a Magistrate Judge.

## XI.   Service by electronic means

The Parties consent to service of pleadings and discovery via email pursuant to Fed. R. Civ. P. 5(b)(2)(E).

## XII.   Policies and procedures

Judge Murphy's policies and procedures are available for the Parties to review on the Court's website. By signing below, counsel for each party and/or each *pro se* party represents that he or she has reviewed the Judge's policies and procedures and acknowledges the requirements contained therein. The Parties and their counsel further acknowledge by signing below that Judge Murphy may strike pleadings and other submissions that do not comply with his policies and procedures.

## XIII.   Other matters

The Parties are actively discussing a proposed stipulation for the conduct of expert discovery in this case and will submit it to the Court as soon as possible.

DATED: June 22, 2026

By:  */s/ William Burgess*

Peter McCall (PA Bar No. 315917)
HILGERS PLLC
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Telephone: (314) 464-9964
Email: pmcall@hilgerslaw.com

William Burgess (*pro hac vice*)
3100 Interstate N. Circle SE
Suite 200, No. 1047
Atlanta, GA 30339
Telephone: (404) 595-7747
Email: wburgess@hilgerslaw.com

Bennett Rawicki (*pro hac vice*)
9750 N. Central Expy, Suite 750
Dallas, TX 75231
Telephone: (469) 640-6842
Email: brawicki@hilgerslaw.com

*Counsel for Plaintiff and the
Proposed Class*

Respectfully submitted,

By: */s/ Alan E. Schoenfeld*

Alan E. Schoenfeld (*pro hac vice*)
David Z. Gringer (*pro hac vice*)
Paul Vanderslice (*pro hac vice*)
Kimberly Chen (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Alan.Schoenfeld@wilmerhale.com
David.Gringer@wilmerhale.com
Paul.Vanderslice@wilmerhale.com
Kimberly.Chen@wilmerhale.com

Medha Gargeya (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Medha.Gargeya@wilmerhale.com

George P. Varghese (PA Bar No. 94329)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
George.Varghese@wilmerhale.com

*Counsel for Defendant Law School
Admission Council, Inc.*